Isabelo Boria Santana, Plaintiff and Appellee, *v.* The Maryland Casualty Co., Inc., et al., Defendants and Appellants.

No. 8477.   Argued June 18, 1942.—Decided July 30, 1942.

*C. Coll y Cuchí* and *Diego O. Marrero* for appellants.   *Lionel Fernández Méndez* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

Isabelo Boria Santana brought suit against The Maryland Casualty Co., Inc., The Northern Porto Rico Railroad Co., Carmen Centrale, Inc., and Finlay & Waymouth Trading Co. to recover $2,580.11 as damages that he alleged to have suffered in consequence of a collision between a locomotive belonging to the Northern Porto Rico Railroad Co. and a truck owned and operated by plaintiff himself.

The defendants opposed that claim, the case went to trial, and the court decided the same by a judgment dismissing the action as to defendants Finlay & Waymouth Trading Co. and Carmen Centrale, Inc., and adjuging The Maryland Casualty Co., Inc., and The Northern Porto Rico Railroad Co. to pay to the plaintiff $700 as damages, with costs including $200 as attorney's fees.

The defendants aggrieved by the judgment took an appeal therefrom. They have assigned two errors: the first claimed to have been committed in rendering judgment against them without evidence; and the second, in changing the theory of the case. In their brief they fail to discuss the matter of negligence. They proceed upon the assumption that the same has been alleged and proved. What they argue is that no evidence has been introduced which would permit the fixing of the amount of the damages· claimed, and that the court rendered judgment on the basis of the total destruction of the truck, which it could not do, as such destruction had not been alleged as the determining cause of the damages.

In order to decide this appeal, it seems logical that we should consider the views expressed by the trial court. Let us see whether or not they are supported by the facts, the law, and the decisions. In its statement of the case and opinion it said:

"We think that the plaintiff has failed to prove his estimate of expenses for repairing the damages either in the alleged sum of $790.11 or in any other sum. On this point the plaintiff, upon being examined by his attorney, only testified what we transcribe from the record, thus:

"Q. Have you taken any steps to repair the truck? —A. I have done nothing. It is in the same condition in which the locomotive left it.—Q. Have you not been able to use that truck?—A. I have not.—Q. Do you know how much would it cost to repair that vehicle? —A. I do not know about how much that would cost.—Q. (Showing a document to the witness) Tell me whether or not that is an estimate of the price of the parts.—Mr. Coll: We object to that question, as that is hearsay.—Q. Answer me; is it or is it not an estimate of the cost of the parts required for repairing your truck? —A. Yes, sir.— Mr. Coll: The fact that the estimate has been transferred to a bill renders it hearsay.— The court: Objection sustained.—Q. What was the cost of the parts required for repairing that vehicle.—A. As to that, I really can not say, because it would be necessary to . . .— Q. Who took steps to ascertain the cost of those repairs? Was it yourself or some other person?—A. I did; but the prices, more or less, do not . . .

"That was all the evidence adduced by the plaintiff regarding the estimate of expenses for repairs, and the same is entirely insufficient.

"We think that plaintiff's allegation as to his inability to pay for the repairs to the vehicle is supported by the evidence.

"It has been sufficiently proved by the plaintiff that, as a result of the accident, the truck was completely destroyed and that it was rendered useless. It is so stated in his own testimony which also specifies the serious damages caused to the vehicle, and states that the chassis is split into two parts, with the cross beams completely bent, the differential having been torn away from the universal joints, and the platform and also the cabin completely destroyed; and that he purchased it from Ceferino Prieto on October 1, 1938, for the sum of $900.

"It is our opinion that, since the truck was destroyed on account of the accident and it has not been repaired—or we better say, reconstructed—there is no right to recover compensation for depreciation of the vehicle or for loss of profits during any period. If the vehicle had been left in a condition capable of being properly repaired, and if the owner had been in a position to pay for such repairs and had repaired the vehicle, then he would be entitled to recover compensation for loss of profits during the period it was being repaired, and also for depreciation.

"Inasmuch as the plaintiff was deprived of the use of his vehicle on account of its total destruction, or at least because the damages suffered were so serious as to definitely render the repairs unusual and expensive for the plaintiff, who is a chauffeur without means to pay for them, and who bought the vehicle on the instalment plan in order to pay for it with his work, and who lived from the proceeds of its operation, we think that a compensation for the value of the truck at the time of the accident, less its present value, would be a just measure of the damages in this case.

"*        *        *        *        *        *        *

"The truck cost the plaintiff, on October 1, 1938, the sum of $900, and there is no reason to believe that it had a lesser or greater value at that time. We estimate the depreciation of the vehicle, due to the use of the same from said date to the day of the accident, at $100; and we estimate the present value of the vehicle, or rather, of its useful parts, at about $100. Consequently, we conclude that an award of $700 would be just and reasonable in this case and it should be granted. Accordingly, judgment should be rendered to

that effect against the defendants The Northern Porto Rico Railroad Co., owner of the railroad company which caused the damages, and its insurer The Maryland Casualty Co., jointly and severally, with costs, including a reasonable sum as attorney's fees.''

Could the trial court base its judgment on the fact that the truck had been totally destroyed by the locomotive?

Let us see. The damages sought to be recovered were itemized in the seventh paragraph of the complaint, thus:

''That the damages suffered by plaintiff in consequence of said collision are itemized as follows:

| | |
|---|---:|
| ''Damages caused to the truck and estimated expenses for repairs to the same_____ | $790.11 |
| ''Depreciation of the truck H–601 as a result of said collision_____ | 150.00 |
| ''Loss of profits computed at the rate of $10 per day yielded by said vehicle H–601 to the plaintiff and total amount of said profits computed from the day of the accident, that is, from April 4, 1939, to the present date _____ | 1,640.00 |
| | $2,580.11.'' |

And at the trial, when submitting the case, counsel for the plaintiff concluded thus:

''. . . that in consequence of said collision the truck suffered serious damages, and claim is made for the cost of the repairs, and for the loss of profits in the use of the vehicle.''

Therefore, we think that really the appellants are right in maintaining that the district court improperly changed the theory of the claim. ''Where the trial court renders judgment upon a particular different from those expressly submitted to it by the complaint, it violates the rules of jurisprudence: *non valet sententia lata de re non petita; si judex pronunciat ultra petita, sententia est ipso jure nulla.* Judgments of February 11 and October 2, 1867.—January 24 and 28, 1869 and October 15, 1880.'' Scaevola, *Principios Generales del Derecho Civil*, p. 329.

██ Apart from the variance, we have examined the record and we find that the only evidence introduced by the plaintiff was his own testimony. All that he said on that matter, besides what the district judge transcribed in his statement of the case and opinion, was in short the following:

In consequence of the collision "the truck was totally destroyed." The chassis is split into two parts, the differential was torn away from the universal joints, and the platform and also the cabin were completely destroyed.

When he was asked what would be the cost of the parts needed for the repairs he answered that he did not know, that he took some steps, that he was asked fifty and odd dollars. . . . Then his attorney interrupted him to ask: "Do you not remember, . . . . tell me, how much did that truck cost" and he answered: "The truck cost me nine hundred dollars . . . I bought it on October 1, 1938." His attorney further asked him: "As a result of this accident, was the truck rendered completely useless?" "Yes, sir." And the attorney said: "That is all."

On cross-examination by counsel for the defendants he stated that he worked with the truck for 18 or 20 days of each month. In April, when the accident occurred, he worked for 3 days. As to February, he does not remember. He was engaged in the transportation of sand, under contract. Prieto was awarded a contract with the PRRA and he transferred it to him. His daily profit, taking into account that derived from the sand, was ten dollars. On each trip he earned three dollars and a half. There was a profit of ten dollars after deducting the expenses for gasoline and oil. The profit on each trip was two and odd dollars. He made from five to six trips daily. He had been working in that place for four months. The only thing he had was the truck. Then he said: "I also have a house."

On re-direct examination by his own attorney he testified thus:

"Q. When you said that you estimated a profit of $2 on the sand, did you or did you not include in that profit. . .?—A. Laborers' wages, gasoline, and oil . . .—Q. And the use and cost of your car?—A. Those two dollars were net profit on each trip.—Q. How much did you pay for the sand? A. I paid ninety dollars.—Q. At what price did you sell it?—A. One dollar per meter.—Q. Do you estimate the $2 profit because you had your own truck?—A. Yes,, sir.—Q. If you did not have your own truck, and had to rent one, how much would the transportation of the sand in the truck cost?— A. Well, that would depend; it is a matter of business.—Q. Have your ever rented your truck by the day?—A. I, never.—Q. Do you not know how much it costs to transport by truck a meter of sand?— A. One dollar; well, it also depends on the place to which it is transported.—Q. That dollar, is that the cost of the transportation of the sand?—A. Yes, sir.—Q. And that estimate of $2 which you stated to the judge, was it based on the fact that the sand did not cost you anything, and because you had your own truck you could transport the sand in it and thus obtain a profit of· $2?—A. Yes, sir."

Upon being cross-examined again by counsel for the adverse party, he testified that he paid the price of the truck —$900—to Prieto in instalments. He paid it out of the proceeds of his own work. He took charge of it before October when he formally purchased it. He paid first $400, then $200, and finally $300. He then stated "my family is well-off and loans me money," and that he made the payments "partly from my work and partly from a loan received from my family." His family—his uncle, Eleuterio Santana— loaned him $500 which he has not yet returned.

Notwithstanding any efforts made, it would be impossible to extract from that evidence sufficient elements to determine depreciation of the truck during the time elapsed since its purchase to the date of the accident, nor to value the parts of the truck left after the collision, and consequently, the estimate made by the trial court lacks a proper basis. This apart from the fact that the statement of said court that the plaintiff lacked means to pay for the repairs

not only is not supported by the evidence, but is contradicted by it, and apart also from the fact that it was not shown that the truck could not be repaired.

No evidence was introduced which would permit the fixing of the value of the truck on the day of the accident or thereabouts. See 8 R.C.L. 486. The truck in question had been purchased as a used vehicle six months before the accident and it continued to be used in the transportation of sand. The purchase price was an element to be considered, but it was not sufficient in itself to fix the value of the vehicle on the day when it was destroyed.

Putting aside the method followed by the court in fixing the amount of the award, is there anything in the record from which one or more of the specific damages claimed could be granted, to wit, injuries, depreciation, and loss of profits?

The existence of the injuries to the vehicle was proved, but not the amount thereof.

There was no evidence regarding the depreciation. There only remains the loss of profits which was claimed for a clearly improper period, that is, from the date of the accident to the filing of the complaint, without there being any allegation as to the probable time required for the repairs, and this particular was not subsequently supplied by the evidence.

In the absence of that information no computation can be made.

Rarely has there been presented to a court a clearer case than this one, in which although a recovery lies, the court is unable to grant an award by reason of the failure on the part of the claimant to comply with his duty to furnish it with the necessary information for fixing the amount thereof.

Therefore, that part of the judgment appealed from whereby the defendants The Maryland Casualty Company, Inc. and The Northern Porto Rico Railroad Co. were ad-

judged to pay $700, with costs and attorney's fees, must be reversed and the complaint also dismissed as to the said defendants, with costs against the plaintiff, but without including attorney's fees.